UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

MICHAEL HANDT,                          :
                                        :
        Plaintiff,                      :        NO. 3:09-cv-00176-CFB
                                        :
    vs.                                 :
                                        :
RICK LYNCH,                             :        ORDER ON MOTION FOR
FLOYD COUNTY, IOWA,                     :        SUMMARY JUDGMENT
STEVE KOFFRON, MARK JACOBSEN,           :
STEVE TAKES, and CARRIE CARSON,         :
                                        :
        Defendants.                     :

## I. INTRODUCTION

On June 3, 2008, Michael Handt was at home.  The sheriff of Floyd County arrested him.
Handt was then taken by a deputy sheriff 130 miles away to the Iowa Medical and Classification
Center (IMCC) in Oakdale, Iowa, which is run by the Iowa Department of Corrections (DOC).
He was kept at IMCC until July 6, 2008, when he was returned to Floyd County, and released
after a hearing on July 7, 2008.

Iowa District Court Judge Peter Newell had sentenced Handt on June 2, 2008, to an
alcohol abuse treatment facility (a 321J Program), under the supervision of the Department of
Correctional Services (DCS).  The sentencing order clearly stated that until a bed was available
in a community 321J Program, Handt was released on conditions designed to restrict or prohibit
his use of alcohol.  He left the courthouse after his sentencing and went home.  When Handt was
delivered to IMCC, he was taken into custody in spite of the terms of the sentencing order.  In
fact, the record is silent on when IMCC actually received the sentencing order.

The question as to the IMCC employees is: does it shock the conscious that they would
take, and keep, a person in custody without authority to do so?

In the previous ruling on this Motion for Summary Judgment (Clerk's No. 47), I found
that qualified immunity could not be granted to the IMCC employees.  The case has been

1

remanded for further findings. After a review of all of Handt's claims against the State Defendants, I reach the same conclusion: they are not entitled to qualified immunity when they received a prisoner without authority, and when they did not release a prisoner they had no authority to keep. A citizen's Fourteenth Amendment rights require the state not to interfere with his liberty, absent due process. Handt was held in custody without authority, which any prison official would know violated the Fourteenth Amendment.

## II. PROCEDURAL HISTORY

This matter comes before the Court on remand from the Eighth Circuit Court of Appeals. *Handt v. Lynch*, No. 11-1829 (8th Cir. June 14, 2012) (Clerk's No. 55). On December 16, 2009, Plaintiff Michael Handt filed a Complaint, pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Iowa Constitution, and common law, due to his imprisonment following his sentencing in state court on June 2, 2008 (Clerk's No. 1). On May 27, 2010, Defendants Steve Koffron, Mark Jacobsen, Steve Takes, and Carrie Carson (State Defendants), all prison officials at IMCC, Oakdale, Iowa, filed a Motion for Summary Judgment (Clerk's No. 27). On June 24, 2010, Plaintiff filed a Resistance (Clerk's No. 30). On July 1, 2010, Plaintiff filed a Second Amended Complaint, adding an Eighth Amendment claim. The State Defendants did not file a Reply to Plaintiff's Resistance to the Motion for Summary Judgment, or amend their Motion for Summary Judgment to discuss the Eighth Amendment claim. On March 10, 2011, the Court entered an Order denying Defendants' Motion for Summary Judgment (Clerk's No. 51). The State Defendants appealed. On June 14, 2012, the Eighth Circuit vacated and remanded "to the district court to engage in a full qualified immunity analysis in the first instance." *Handt v. Lynch*, No. 11-1829, at *9.

A hearing on this matter was held on July 11, 2012. On July 27, 2012, Plaintiff filed a Third Amended Complaint (Clerk's No. 63), abandoning his Fourth Amendment unreasonable search claim. On August 7, 2012, Defendants Rick Lynch and Floyd County, Iowa (County Defendants) filed an Answer. (Clerk's No. 64). On September 28, 2012, the State Defendants filed an Answer (Clerk's No. 66). The Court held another hearing on September 25, 2012. David A. O'Brien represented Plaintiff; William A. Hill represented State Defendants Koffron,

Jacobsen, Takes, and Carson; and Terry J. Abernathy and Nick Kilburg represented County Defendants Rick Lynch and Floyd County. At the September 25, 2012, hearing, the parties agreed to proceed without additional briefing, and asked the Court to reconsider the State Defendants' Motion for Summary Judgment based upon the original motion papers and record.

Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the U.S. Constitution, and asserts claims for violation of his rights under the Iowa Constitution[1] and common law, based on allegations that Defendants unlawfully seized and detained him in prison. Handt sues Defendants individually and in their official capacities. In their Motion for Summary Judgment, the State Defendants assert they are entitled to summary judgment on all Handt's claims against them, because no genuine issues of material fact are in dispute, and as a matter of law they are entitled to judgment on the basis of the qualified immunity doctrine.

Handt maintains that genuine issues of material fact remain in dispute, and that the State Defendants are not entitled to qualified immunity as a matter of law. The County Defendants have not filed a dispositive motion.

The parties have consented to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c). The Court considers the State Defendants' Motion for Summary Judgment fully submitted. After carefully considering the record and arguments of the parties, the Court finds and holds as follows on the issues presented.

### III. FACTS

The Eighth Circuit noted: "the district court did an admirable job of explaining the facts of this case and construing those facts in the light most favorable to Handt." *Handt*, No. 11-1829, at *8. The following facts are contained in the Court's prior Order on Motion for Summary Judgment (Clerk's No. 51), and are either not in dispute, or are those viewed in the light most favorable to Handt, the nonmoving party. The record in this case is very limited, and consists of

---

[1] Both parties make arguments using only the federal constitutional standards, and neither "suggest a different state analysis or offer any reasons for a separate analysis." *State v. DeWitt*, 811 N.W.2d 460, 467 (Iowa 2012). The Court will, therefore, analyze Handt's claims using only the federal constitutional framework. *See id.*; *State v. Dudley*, 766 N.W.2d 606, 624 (Iowa 2009).

a copy of the June 2, 2008, judgment and sentencing order; a copy of the Order of July 7, 2008,

releasing Plaintiff from custody; the transcript of the February 23, 2009, hearing; and an

Affidavit from Plaintiff.

In 2008, Handt was charged in the Iowa District Court for Floyd County with Operating a

Motor Vehicle while Intoxicated, Third Offense, and released on bond. He pleaded guilty to the

charge. On June 2, 2008, Handt appeared for sentencing before Judge Newell, in Charles City,

Iowa. Jesse Marzen, the Floyd County Attorney, represented the State at the hearing. The Court

entered judgment, and sentenced Handt in relevant part as follows:

> That the Defendant is convicted of Operating While Intoxicated, Third Offense, a
> Class "D" Felony, in violation of Iowa Code Sections 321J.2 and 903.1. It is
> ORDERED:
> 1.     Defendant is committed to the custody of the Director of the Department
>        of Corrections for no more than five years. The Defendant shall be placed
>        in a 321J Program when space becomes available. Pending space
>        becoming available in a 321J Program, the Defendant shall be placed
>        under the Pre-Placement Supervision of the Department of Correctional
>        Services. The Department shall endeavor to enroll the Defendant in the
>        Pre-Placement Supervision Program within 24 hours of receipt of the
>        Court's Order.
>
> The Defendant, as condition of his pre-placement supervision, shall be
> required to abstain from alcohol. The Defendant shall be prohibited from
> going into bars, taverns or liquor stores. The Defendant shall be required
> to follow through with any recommendations for substance abuse
> treatment.
>
> The Defendant shall also undergo testing to see if he is medically qualified
> for antabuse treatment.
>
> The Department shall also endeavour to test the Defendant for alcohol
> consumption on a daily basis.
>
> The Defendant is advised that if he violates any of the conditions of the
> Pre-Placement Supervision Program, he may be immediately taken into
> custody and held pending space becoming available in a 321J Program.
>
> The Defendant is also advised that a violation of the pre-placement
> conditions of probation could result in a hearing to determine whether the

> sentence should be modified and the Defendant should be placed in a
> penal institution rather than a 321J Program.

Order, *State of Iowa v. Handt*, No. OWCR020238 (Iowa Dist. Ct. June 2, 2008) (Clerk's No. 27-3). A notation typed at the end of the Order states that a copy was provided to Handt and the Department of Correctional Services; there was no typed indication a copy was sent to the Department of Corrections. Under the typed heading, "Copies to:" a handwritten note signed and dated June 4, 2008, states: "IMCC - Oakdale - 2 cert." Order, *Handt*, No. OWCR020238 (June 2, 2008) (Clerk's No. 27-4).

On June 2, 2008, after his sentencing hearing, Handt was released, and returned home. On June 3, Defendant Rick Lynch, Sheriff of Floyd County, went to Handt's home and took him into custody. A Floyd County deputy sheriff transported Handt to IMCC, which is outside Floyd County, approximately 130 miles from Charles City. Initially, Handt assumed that IMCC had available a 321J treatment program. Handt was taken into custody at IMCC by Defendant Koffron, Jacobsen, or Takes ("intake officers").[2]

Iowa Rule of Criminal Procedure 2.26 provides that when a judgment of confinement, "either in the penitentiary or county jail or other detention facility, is pronounced, an execution, consisting of a certified copy of the entry of judgment must be forthwith furnished to the officer whose duty it is to execute the same, who shall proceed and execute it accordingly." I. R. Crim. P. 2.26(1)(a) (2008). When the judgment of confinement is to be executed in a county outside the county in which the trial was held, "the sheriff shall deliver a certified copy of the execution with the body of the defendant to the keeper of the jail or penitentiary in which the defendant is to be confined in execution of the judgment, and take receipt therefor on a duplicate copy thereof." I. R. Crim. P. 2.26(1)(c). No evidence indicates what procedures IMCC had in June

---

[2] Handt concedes that only one of the intake officers named as Defendants actually processed him into prison, and "[o]nce discovery in this case reveals the correct processing prison guard Defendant, Handt intends to dismiss all claims against the remaining two processing State Defendants." (Pl.'s Br. at 17). For purposes of this analysis, the Court treats the three named intake officers as if they were a single "John Doe" Defendant, examining the action at IMCC's intake procedure, rather than a specific individual's action. Defendants have neither objected to this approach, nor provided any evidence identifying which of these Defendants took custody of Handt.

2008 for ensuring that IMCC received the required certified copy of the execution from the deputy sheriff, along with the person delivered to IMCC. Viewing the record in the light most favorable to Handt, the Court finds a reasonable inference is that under prison intake procedures, the intake officers committing a defendant to their custody would have known whether they actually received a copy of the execution, certified or not, and that they should have received a copy of the execution.

No evidence indicates what, if any, documentation the Floyd County deputy sheriff provided the intake officer when he delivered Handt to IMCC on June 3. When viewed in the light most favorable to Handt, the handwritten note at the bottom of the June 2 sentencing order raises a reasonable inference that two certified copies of the order were sent (by postal or electronic fashion) to IMCC on June 4. Based on this circumstance, a jury could reasonably find that someone sent IMCC certified copies of the order on June 4, because the facility did not receive a copy on June 3 when Handt was delivered to IMCC and confined. Further support for the inference that the deputy sheriff did not provide IMCC a certified copy of the sentencing order on June 3 comes from Handt's affidavit. Handt testified that Sheriff Lynch "very much dislikes me due to difficulties that arose during previous times that I have been held in the Floyd County Jail. Previously while in the Floyd County Jail, I have had serious health problems that required medical visits and a hospital emergency room visit." (Handt Aff. at 2). According to Handt, Sheriff Lynch made it very clear that he did not like having to take care of Handt's physical issues, which required additional staff time and resources. Handt stated that after he was eventually returned from IMCC to Floyd County in July 2008, he accused Sheriff Lynch of intentionally causing him to be taken to IMCC in violation of the court's sentencing order. Handt maintains that Sheriff Lynch responded: "You son of a bitch, you cost us a lot of money. I had to do something." *Id.*

A reasonable inference exists that the Defendant intake officer would have known on June 3 that the deputy sheriff did not deliver a certified copy of the execution when he delivered Handt to IMCC, and that the facility committed him without the required certified copy. No evidence indicates what, if anything, the Defendant intake officer did as a result of receiving a prisoner without paperwork indicating the authority to commit him to IMCC's custody.

6

The Iowa Code provided that within ten days of Handt's entrance at IMCC, the IMCC superintendent was required to forward a "true copy" of Handt's entrance record to the DOC director. Iowa Code § 904.501 (2007). The Code further provided that the IMCC superintendent "shall within three days of the commitment or entrance of the person at the institution notify the director if there is any question as to the propriety of the commitment or detention of any person received at the institution," and the DOC director "shall inquire into the matter presented, and take appropriate action." *Id.* at § 904.502. Viewing the record in the light most favorable to Handt, the Court finds a reasonable inference exists that IMCC had policies and procedures for prison staff to follow, in order to notify the IMCC superintendent that there was a question as to the propriety of the commitment or detention of any person received at the institution. The Court finds a reasonable inference that IMCC had procedures for intake officials to follow when a question concerning the propriety of a commitment arose during intake, such as when a deputy sheriff failed to deliver a certified copy of the execution with the defendant to IMCC. The record does not reveal what the procedures were. No evidence indicates the Defendant intake officer took any action to notify the IMCC superintendent about Handt's commitment without a certified copy of the execution. No evidence indicates that any staff at IMCC inquired, or requested that the DOC director inquire, into the propriety of keeping Handt in custody at IMCC.

Handt asserts he sent repeated kites (prison memos) to Defendant Carson, his assigned counselor at IMCC, telling her about the terms of the state court's June 2 sentencing order, and that the terms did not include imprisonment, but rather called for his pre-placement supervision in his community, by the Department of Correctional Services, pending placement in a community residential treatment facility. According to Handt, Carson ignored his protests. Copies of the kites are not in the record.

No evidence indicates what IMCC's procedures were, should a prisoner inform a prison official that a sentencing order was not being followed. No evidence indicates whether Carson followed those procedures. No evidence indicates Carson ever notified the IMCC superintendent, or any other prison official, that Handt had raised a question regarding the propriety of his commitment or detention at IMCC pursuant to the June 2 court order. No

7

evidence indicates whether, or how, Carson answered Handt's kites. Viewing the evidence in the light most favorable to Handt, the Court finds that Carson knew it was unconstitutional to imprison a person without court ordered authority, and was required to verify such authority, or at least report the situation, when a prisoner repeatedly notified her that his incarceration was not authorized in the sentencing order.

While he was detained at IMCC, Handt wrote a letter,[3] complaining that he had been wrongfully taken to IMCC. At some point, Judge Newell saw the letter and in response, ordered that Handt be returned from IMCC to the Floyd County Courthouse for "a hearing on the implementation of the Court's Judgment and Sentence." Tr., *Handt*, No. OWCR020238 (Feb. 23, 2009) (Clerk's No. 30-4, at 2).

In compliance with the court's order, Floyd County Sheriff's Office personnel transported Handt from IMCC to the Floyd County Jail.[4] On July 7, 2008, Handt was brought from the jail to the hearing. After the hearing, Judge Newell filed an Order:

> That the Defendant shall be released on today's date from the custody of the Floyd County Sheriff. The Defendant shall not be released from custody of the Floyd County Sheriff until he has met with members of the Department of Correctional Services and has agreed to pre-placement supervision conditions of the Department of Correctional Services.
>
> Mr. Handt shall be required to abstain from the use of alcohol. Mr. Handt is prohibited from going into bars, taverns or liquor stores. Mr. Handt may be required to meet with the Department of Correctional Services on a daily basis or with the Floyd County Sheriff if the Department of Correctional Services requires this. Mr. Handt shall be required to abide by all the terms and conditions of pre-placement supervision.
>
> The Defendant has been advised that if he violates any of the conditions of pre-placement supervision, he may be taken immediately into custody.
>
> IT IS FURTHER ORDERED That the Defendant shall be required to report at 8:30 a.m. on Thursday, July 10th, 2008, to the Floyd County Sheriff's Department in Charles City, Iowa. The Floyd County Sheriff shall then transport

---

[3] The record does not reveal to whom or when Handt wrote or sent the letter.

[4] The date of Handt's transport from IMCC back to the Floyd County jail is not in the record, but from the transcript, it appears it was on or about July 6, 2008. (Clerk's No. 30-5, at 4).

the Defendant to the BeJe Clark Residential Center in Mason City, Iowa, for placement in the 321J Program.

Order, *Handt*, No. OWCR020238 (July 7, 2008) (Clerk's No. 27-3).

Handt was assessed $277 in fees for the cost of his transportation from IMCC back to Floyd County. He filed a letter with the court objecting to this assessment. Judge Newell held a hearing on February 23, 2009, concerning the assessment. At this hearing, Marzen again represented the State; Handt appeared *pro se*. Describing the case's history, Judge Newell stated, "the Court's Order on the sentencing indicated that [Defendant Handt] would be placed in a 321J Program when space became available. Pending space becoming available, he would be placed under the preplacement supervision of the Department of Correctional Services. And then, for reasons that are still unclear to the Court, the Defendant was taken to the Iowa Medical Classification Center in Oakdale." *Id.* When the judge asked Marzen if he had a position with regard to Handt's objection to assessment of the $277 transportation costs, the County Attorney responded as follows:

> I was involved in that conversation, initially, and . . . the Department of Corrections took the position that they were to decide where Mr. Handt was going to serve his programming at, and had communicated to the Sheriff that they wanted him brought to Oakdale to serve that.
> Now, once Mr. Handt writes his letter and we took a further look at it, somebody else in the Department of Corrections said, well, no; he shouldn't have been taken down there; he should have served it in Mason City; and thus, you know, came the order to release him back here.
> Your Honor, it wasn't the State's request; it wasn't the Defendant's request that he go to Oakdale. It was the Department of Corrections' screw-up. I don't see where Mr. Handt should have to pay for the costs of the Department of Corrections erroneously sending him to Oakdale when that wasn't the Order of this Court. And the Department of Corrections later acknowledged that, yeah, he should have been able to serve it up here.

Tr., *Handt*, No. OWCR020238 (Clerk's No. 30-4, at 3-4). The judge concluded Handt should not be assessed the transportation fees, and ordered that $277 be removed from the judgment.

## IV. SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

A court ruling on a motion for summary judgment must view the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the burden to show there is no

genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets this burden, the nonmoving party may not rest on the allegations in its pleadings, but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c). The resisting party must "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *see Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 743 (8th Cir. 2009). The applicable substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. A party must substantiate its allegations with sufficient probative evidence that would permit a finding in its favor "based on more than mere speculation, conjecture, or fantasy." *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party]" who has the burden of proof on an issue. *Anderson*, 477 U.S. at 252 (alteration added). Summary judgments "in favor of parties who have the burden of proof are rare, and rightly so." *Ladco Props. XVII, L.L.C. v. Jefferson-Pilot Life Ins. Co.*, 523 F. Supp. 2d 940, 946 (S.D. Iowa 2007) (quoting *Turner v. Ferguson*, 149 F. Supp. 2d 821, 824 (8th Cir. 1998)).

The Iowa prison officials (State Defendants) argue that qualified immunity entitles them to summary judgment on Handt's claims against them in their individual capacities. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Pace v. City of Des Moines*, 201 F.3d 1050, 1052 (8th Cir. 2002) (internal citations omitted). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly" and the need to shield them from

10

liability "when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. The driving force behind creation of the doctrine was "a desire to ensure that 'insubstantial claims' against government officials" would be resolved before discovery. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)). Qualified immunity "'is effectively lost if a case is erroneously permitted to go to trial'" because the doctrine affords immunity from suit and not merely immunity from liability. *Id.* at 232 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The United States Supreme Court has articulated the following two prong test for resolving qualified immunity claims:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, ... the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct.

*Id.* (internal citations omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. When a party seeks summary judgment "on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication." *Ortiz v. Jordan*, __ U.S. __, __, 131 S. Ct. 884, 889 (2011). It is a question of law whether summary judgment is appropriate on the grounds of qualified immunity based on a particular set of facts, with the burden on the proponent of immunity to establish the relevant predicate facts. *Pace*, 201 F.3d at 1056 (citing *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999)). "[O]nce the predicate facts have been established, for the purposes of qualified immunity there is no such thing as a 'genuine issue of fact' as to whether an officer 'should have known' that his conduct violated constitutional rights." *Id.* However, "[s]ummary judgment is not appropriate where ... a dispute remains regarding facts material to the qualified immunity issue." *Rohrbough v. Hall*, 586 F.3d 582, 587 (8th Cir. 2009) (noting defendants "may continue to assert qualified immunity at trial, where the factual issues will be resolved by a jury."); *see Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012) ("Qualified immunity is a legal question for the court, not the jury, to decide in the first instance, based either on the allegations or, if material facts are in dispute, on the facts found by the jury.").

In resolving qualified immunity claims, a court considers (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the official's alleged misconduct, such that a reasonable official would have known that his actions were unlawful in the circumstances of the case. *See Pearson*, 555 U.S. at 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2002), *overruled in part on other grounds by Pearson*, 555 U.S. at 236. For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Creighton*, 483 U.S. at 640. "Officials are not liable for incorrect decisions made in 'gray areas' of the law." *Burke v. Sullivan*, 677 F.3d 367, 371 (8th Cir. 2012) (quoting *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)).

## V. DISCUSSION

Section 1983 imposes liability upon an individual "who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). "To recover under § 1983, a plaintiff must prove '(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right.'" *McDonald v. City of St. Paul*, 679 F.3d 698, 704 (8th Cir. 2012) (quoting *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)). However, "'qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.'" *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004) (quoting *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996)).

In the opinion remanding this case, the Eighth Circuit explained:

The problem here arises ... in the analysis of the qualified immunity claims. For instance, the district court repeatedly stated in the analysis that there were material issues of fact in dispute. When considering the issue of qualified

immunity, however, the district court is to "view those facts in a light most favorable to the non-moving party as long as those facts are not so 'blatantly contradicted by the record ... that no reasonable jury could believe [them].'" *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (alterations in original). Then the court should determine if those facts demonstrate a constitutional violation that is clearly established. The district court's decision, however, lacks consideration of the individual defendants' actions with respect to each of the constitutional claims.

*Handt*, No. 11-1829, at *8.

Handt's allegations against the State Defendants are the same with respect to each of his claims. Handt alleges he was taken into custody at IMCC by an intake officer, without any appropriate Court Order, or other necessary documentation authorizing his imprisonment. Handt alleges that, while imprisoned, he sent repeated kites to Carson, his assigned counselor, informing her that he was supposed to be placed in a 321J Program, and not incarcerated, pursuant to the June 2 sentencing order of the Iowa District Court. Handt claims that Carson ignored his kites, causing his continued imprisonment without authorization.

The State Defendants contend they had no duty to investigate Handt's claim that he should not have been placed in prison. Further, the State Defendants argue that Iowa law was not clearly established with regard to whether the language of Handt's sentencing order required imprisonment with the Department of Corrections, until the later decision in *State of Iowa v. Iowa District Court*, No. 9-972 / 09-0582, 2010 Iowa App. LEXIS 68 (Iowa Ct. App. Feb. 10, 2010), which held that a District Court could commit a defendant to the Director of the DOC, while also authorizing the defendant's release to the local Department of Correctional Services pending space becoming available in a community treatment program.

### A. Fourth Amendment Unreasonable Seizure

Handt claims that his unauthorized imprisonment violated his right to be free from unreasonable seizure under the Fourth Amendment. The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.

Handt cites only one case for the argument that "[t]he unreasonable seizure of a person in the form of a false arrest and imprisonment is violative of the Fourth Amendment and actionable under § 1983." *Garenani v. County of Clinton*, 552 F. Supp. 2d 328, 333 (N.D.N.Y 2008); *but see Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) (explaining that where a plaintiff alleges "defendants imprisoned him for thirty days beyond the sentence imposed upon him without a valid commitment order," the plaintiff must go beyond proving the common law elements of false imprisonment and show that the defendants "imprisoned him in violation of his fourteenth amendment due process rights."). Handt argues, without citing any supporting authority, that "[a]ny post trial punishment not authorized by a court of law violates the Fourth Amendment." (Pl.'s Br. at 6). However, the Fourth Amendment "governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." *Armstrong v. Squadrito*, 152 F.3d 564, 569 (7th Cir. 1998) (internal quotation marks omitted).

The actions by the State Defendants took place after Handt was charged with and pled guilty to a felony, and was sentenced by the Iowa District Court for Floyd County. Accordingly, the Fourth Amendment does not provide the appropriate grant of rights to support Handt's claims against the State Defendants. Based upon the State Defendants' Motion, and Plaintiff's Third Amended Complaint, Handt's Fourth Amendment unreasonable seizure claims against Defendants Koffron, Jacobsen, Takes and Carson are dismissed.

## B. Fourteenth Amendment Substantive Due Process

Handt claims that the State Defendants violated his substantive due process rights. The Due Process Clause of the Fourteenth Amendment contains a procedural and a substantive component.[5] "Analysis of either a procedural or substantive due process claim must begin with

---

[5] Handt also contends that he has asserted Fifth Amendment due process claims. However, "'[t]he Fifth Amendment's Due Process Clause applies only to the federal government or federal actions.'" *Zutz v. Nelson*, 601 F.3d 842, 849 n.4 (8th Cir. 2010) (quoting *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009)). Because none of the State Defendants are federal actors, Handt's Fifth Amendment substantive and procedural due process claims against them must fail. Summary Judgment is granted on Handt's Fifth Amendment claims

an examination of the interest allegedly violated." *McDonald*, 679 F.3d at 704 (internal quotations and citations omitted). "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "For purposes of substantive due process analysis, fundamental rights are those 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* (quoting *Terrell v. Larson*, 396 F.3d 975, 978 n.1 (8th Cir. 2005)).

The Eighth Circuit has "recognized a protected liberty interest in being free from wrongful, prolonged incarceration." *Davis*, 375 F.3d at 712-13 ("even a thirty-minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment." (citing *Young v. City of Little Rock*, 249 F.3d 730, 736 (8th Cir. 2001))). Handt's claim of unauthorized incarceration contrary to the June 2 sentencing order is analogous to a claim of prolonged incarceration beyond the term of the sentence, or after issuance of a release order. Handt's complaint, alleging that he was wrongfully incarcerated for thirty-four days in violation of the June 2 sentencing order, "implicates a constitutionally protected interest under the Fourteenth Amendment's guarantee of due process of law." *Id.* at 718. However, "prolonged detention does not rise to the level of a Fourteenth Amendment violation unless the defendants acted with the requisite state of mind." *Id.* To establish a substantive due process violation, the official's conduct must shock the conscious. *See Flowers*, 478 F.3d at 873. To show that the official's conduct shocked the conscious, Handt "will have to prove that the defendants were deliberately indifferent to his plight in order to prevail on his [substantive due process] claim." *Davis*, 375 F.3d at 718 (citing *Armstrong*, 152 F.3d at 576).

To act with deliberate indifference means to recklessly disregard a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). "Whether the official's conduct

---

against Defendants Koffron, Jacobsen, Takes and Carson.

15

constitutes deliberate indifference is a question of fact for the jury." *Luckert*, 684 F.3d at 817 (citing *Davis*, 375 F.3d at 719). Therefore, to defeat the State Defendants' qualified immunity claim, Handt must show that (1) a reasonable jury could find that the State Defendants' conduct constituted deliberate indifference, and (2) the constitutional right alleged to have been violated was clearly established at the time of the violation. *See Davis*, 375 F.3d at 719. The Court is not required to analyze these steps in sequential order, and will first consider whether Handt's right was clearly established. *See Pearson*, 555 U.S. at 233.

The State Defendants argue that "the decision in [*State of Iowa v.*] *Iowa District Court* confirms that the law was not well established with regard to what the district courts may actually have intended in such orders." (Defs.' Br. at 5). The state court's June 2 sentencing order, however, was clear that Handt was not to be incarcerated, stating, in part:

> The Defendant, as conditions of his pre-placement supervision, shall be required to abstain from alcohol. The Defendant shall be prohibited from going into bars, taverns or liquor stores.
>
> ...
>
> The Department shall also endeavour to test the Defendant for alcohol consumption on a daily basis.
>
> The Defendant is advised that if he violates any of the conditions of the Pre-Placement Supervision Program, he may be immediately taken into custody and held pending space becoming available in a 321J Program.
>
> The Defendant is also advised that a violation of the pre-placement conditions of probation could result in a hearing to determine whether the sentence should be modified and the Defendant should be placed in a penal institution rather than a 321J Program.

These provisions of the sentencing order would be meaningless if the order were meant to sentence Handt to incarceration pending space becoming available in a 321J Program in the community. There is no reasonable argument that the June 2 sentencing order was ambiguous, or provided that Handt should be incarcerated pending space becoming available in a 321J Program. In fact, Handt was released from the courtroom after his sentencing, and not arrested by the sheriff and taken into custody until the next day.

16

The State Defendants further argue that, at the time of his imprisonment, Handt did not have a clearly established right to not be incarcerated pursuant to the June 2 sentencing order, because Iowa law was not clear regarding whether "the district court exceeded its sentencing authority in ordering [Handt] to be released to the supervision of the DCS 'pending bed space' at a community residential facility" until the February 10, 2010, decision in *Iowa District Court*. 2010 Iowa App. LEXIS 68, at *3, *10 (concluding "the district court did nothing improper in committing [the defendant] to the custody of the DOC and providing that he be released to the supervision of the DCS pending sufficient space in a community residential facility. That sentencing option was authorized by section 904.513; thus, the sentence imposed by the district court was not illegal."). The issue, however, is not whether the sentencing order "was clearly authorized under [Iowa] law," but whether Handt had a clearly established right not to be imprisoned without a court order sentencing him to incarceration. *See Slone v. Herman*, 983 F.2d 107, 109-10 (8th Cir. 1993) ("Whether or not defendants agreed with the order or thought that it was lawful does not diminish [Handt's] liberty interest or make his liberty interest less clear."). The state cannot imprison someone without a court order authorizing incarceration. Handt's incarceration on June 3, 2008, was not authorized by the June 2 sentencing order, and "unlawfully deprived [Handt] of his liberty, and a person's liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment." *Id.* at 110; *see Davis*, 375 F.3d at 719 ("[W]e have no difficulty concluding that Davis alleged the deprivation of a clearly established right and that a reasonable government actor would know that failing to respond to Davis's requests to be released in keeping with the court order that he possessed was unlawful.").

The court's June 2 sentencing order was clear. It did not provide for Handt's incarceration. Handt, therefore, had a clearly established liberty interest in not being incarcerated, and the Court next considers whether a reasonable jury could find the State Defendants' conduct rose to the level of deliberate indifference, and violated that liberty interest. *See Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009).

### *1. Substantive Due Process Claim Against Koffron, Jacobsen and/or Takes*

One of IMCC intake officers Koffron, Jacobsen, or Takes, was the prison intake officer when Handt was taken into custody and processed. The State Defendants contend the IMCC intake process was reasonable, because of the Floyd County officials' representation that Handt's imprisonment at IMCC was authorized; they argue that they did not have a duty to investigate the lawfulness of Handt's incarceration.

"[T]he general rule is that officials are not 'required by the Constitution to investigate independently every claim of innocence.'" *Id.* at 734 (quoting *Baker*, 443 U.S. at 145-46).[6] The intake officers cite the Eighth Circuit's holding that "[t]he few decisions that have based a finding of deliberate indifference on a failure to investigate have uniformly involved defendants who had the *duty* to review the inmate's status and the *authority* to release him." *Id.* (emphasis in original). In *Dahl*, the plaintiff-appellee brought a § 1983 action, seeking damages for prolonged incarceration in violation of his due process right to liberty, against the warden, after a state court granted Dahl's writ of *habeas corpus*; the court "conclud[ed] that the Ex Post Facto Clause barred the South Dakota Department of Corrections (DOC) from withholding good-time credits based on a statute enacted after Dahl's offense." *Id.* at 731. Because "Dahl failed to present evidence that [the warden] had the authority to restore Dahl's good-time credits and order his release," and there was "no evidence [the warden] *knew* Dahl was entitled to be released," the Eighth Circuit determined that the warden was entitled to qualified immunity. *Id.* at 734-35 (noting "Dahl's right to release could only be determined by consulting his central prison record ... or by repeating [an] audit of Dahl's underlying criminal file."). The court in *Dahl* noted that "in *Davis*, the judicial [release] order provided authority needed to release the inmate," whereas "Dahl seeks damages for being incarcerated *before* the judge granted his habeas petition and ordered his release." *Id.* at 734 (emphasis in original).

---

[6] *Baker* involved a prisoner arrested on an arrest warrant issued for his brother, and held for several days, before the sheriff obtained a picture of the brother, and realized the wrong person had been arrested. The Supreme Court held: "Depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.'" *Baker*, 443 U.S. at 145.

The authority to release Handt was provided in the June 2 sentencing order, because the order never authorized his incarceration. Further, a burdensome investigation or audit was not required to determine Handt's incarceration was not ordered by the state court. Merely reading the June 2 sentencing order would make clear Handt was to be released and placed under pre-placement supervision of DCS pending space becoming available at a 321J Program, and not incarcerated. Viewing the facts in the light most favorable to Handt, a reasonable inference exists that the required certified copy of execution containing the June 2 sentencing order was not delivered with Handt to IMCC on June 3, 2008, when he was placed into custody there. If a copy of execution, certified or not, was delivered with Handt to IMCC on June 3, 2008, a reasonable inference exists that the intake officer did not read the sentencing order, or that the intake officer read, but did not follow, the sentencing order. Based on the facts in the record, whether or not Handt protested his incarceration to the Defendant intake officer, the propriety of Handt's incarceration was in question on June 3, 2008, when he was committed to the custody of IMCC. "Whatever haziness obscures the exact contours of a duty to investigate burns off once the authorities *know* that they have no basis for detention." *Davis*, 375 F.3d at 716 (emphasis in original) (internal quotation marks omitted).

It is the State Defendants' burden, as the proponents of qualified immunity, to establish the relevant predicate facts when seeking summary judgment on this basis. *Pace*, 201 F.3d at 1056. The record lacks any evidence of what policies and procedures IMCC had regarding committing a person without the required certified copy of the execution from the sheriff, and what the Defendant intake officer actually knew, or should have known, at the time Handt was committed to IMCC. The State Defendants have not established sufficient facts by which the Court could determine, as a matter of law, that the intake officer was not deliberately indifferent to Handt's constitutional right against unauthorized incarceration. A reasonable inference exists that the relevant IMCC policies and procedures, in addition to the Constitution, established a duty on the part of the intake officer to report the circumstances of Handt's intake and incarceration to some other official for an investigation, or simply refuse to take custody of a person presented without a valid and clear execution of judgment. The State Defendants have not shown that the Defendant intake officer took any action to ensure that Handt's incarceration

at IMCC was authorized, and was not plainly in violation of the Constitution. Viewing the evidence in the light most favorable to Handt, the Defendant intake officer was deliberately indifferent to his Fourteenth Amendment rights.

The facts in the record with regard to Handt's substantive due process claim about his reception and detention at IMCC prevent summary judgment on the basis of qualified immunity. The circumstances of Handt's intake and commitment raise questions regarding the propriety of his commitment; the propriety of Handt's commitment at IMCC was raised when the intake officer failed to receive a certified copy of the execution, or any other appropriate authority, or did not read and follow the sentencing order, when Handt was committed to the custody of IMCC. Further, the intake officer did not take any action to notify prison officials about Handt's commitment without receipt of a certified copy of the execution, or any other appropriate authority. Because Handt has shown deprivation of a clearly established constitutional right to liberty when he was received and kept at IMCC in violation of the plain language of the sentencing order, or without receiving or reading the sentencing order, summary judgment is denied on Handt's substantive due process claim against Defendants Koffron, Jacobsen and Takes.

## 2. *Substantive Due Process Claim Against Carson*

Handt alleges Carson violated his substantive due process right to liberty by repeatedly ignoring his kites challenging the propriety of his incarceration. Carson argues she is entitled to summary judgment on the basis of qualified immunity, because she had no duty to investigate whether Handt was properly incarcerated at IMCC, or authority to release him from custody.

Handt presented affidavit evidence that he repeatedly notified Carson that, pursuant to the June 2 sentencing order, he was not to be imprisoned at IMCC. While Carson may not have had a duty to independently review Handt's status, that does not mean Carson did not have a duty to take action once Handt informed her that the June 2 sentencing order did not order his incarceration. Prison officials "cannot 'stand by idly after an inmate has raised the prospect that he is being unlawfully incarcerated and has provided documentary evidence in support of his claim.'" *Davis*, 375 F.3d at 716 (quoting *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990)). The June 2 sentencing order, which did not authorize Handt's incarceration, provided

the authority needed to release him. *See Dahl*, 580 F.3d at 734. Any prison official reviewing this sentencing order would understand there was no authority to keep Handt at IMCC.

Viewing the facts in the light most favorable to Handt, a reasonable inference exists that IMCC had policies and procedures for staff, such as Carson, to follow in notifying the IMCC superintendent that there was any question as to the propriety of the commitment or detention of any person received at the institution. A reasonable inference is that those procedures, under the circumstances of this case, called for Carson to take some action, and not merely ignore Handt's repeated challenges to the propriety of his commitment at IMCC, when he specifically referenced the terms of his sentencing order. Also, Iowa law provided that within three days of taking an inmate into custody, the IMCC superintendent must notify the DOC director as to whether there was any question about the propriety of the inmate's commitment or detention. Nothing in the record shows this type of review was completed by anyone, muchless instigated by Carson.

Viewing the facts in the light most favorable to Handt, a reasonable jury could find that Carson acted with deliberate indifference to his clearly established Fourteenth Amendment right to not be incarcerated, in violation of his substantive due process rights by not acting on his claim of illegal incarceration in light of the unambiguous language of the sentencing order. Because Handt has shown deprivation of a clearly established constitutional right to liberty, and a reasonable jury could find that Carson acted with deliberate indifference to this constitutional right, summary judgment is denied on Handt's substantive due process claim against Defendant Carson.

### C. Fourteenth Amendment Procedural Due Process

Handt alleges that his procedural due process rights were violated because "[n]o Court ordered Handt to serve a prison sentence, but no State Defendant bothered to read and comprehend the Sentencing Order. ... [T]he State Defendants will process and keep in prison anyone whom a law enforcement officer presents for incarceration whether a Court has so ordered or not." (Pl.'s Br. at 11).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the

... Fourteenth Amendment." *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011) (internal quotations omitted). In the context of procedural due process, Handt "must first demonstrate that he was deprived of life, liberty, or property by government action." *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). As previously discussed, Handt has shown that his incarceration at IMCC deprived him of his clearly established liberty interest. Consequently, the issue is what procedural process Handt was owed before the State Defendants could deprive him of that liberty interest. *See id.* ("Having determined that a liberty interest does in fact exist in this case, we must next determine what process is necessary to protect that interest."); *Walters*, 660 F.3d at 311.

The Supreme Court has held that "[b]ecause the requirements of due process are flexible and call for such procedural protections as the particular situation demands, we generally have declined to establish rigid rules and instead have embraced a framework to evaluate the sufficiency of particular procedures." *Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005) (internal quotations and citations omitted) ("The framework ... requires consideration of three distinct factors: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976))).

### 1. *Procedural Due Process Claim Against Koffron, Jacobsen and/or Takes*

There is a reasonable inference, based on the handwritten note at the bottom of the June 2 sentencing order, that the Floyd County sheriff's deputy did not provide IMCC with a certified copy of the sentencing order with Handt on June 3, as required by Iowa law, and Handt was committed to the custody of IMCC without the required certified copy. Even if Handt was delivered to IMCC with an uncertified copy of the execution, no one at IMCC, including the intake officer, followed the court's order. Evidence of the IMCC procedures with regard to processing prisoner intake, obtaining the required certified copy of the execution, and committing an inmate without the required certified copy is not in the record. Evidence of the

actions taken, if any, by the Defendant intake officer in response to Handt's committment at IMCC is also not in the record. Because the record lacks evidence regarding the procedures in place at IMCC for receiving people into custody, and the process Handt actually experienced at IMCC, and the record is clear that Handt was taken into and kept in custody at IMCC without a court order authorizing his imprisonment, a reasonable inference exists that the process Handt received was insufficient. Because Handt has shown deprivation of a clearly established constitutional right to liberty, and a reasonable jury could find that Handt received insufficient procedural due process from the Defendant intake officer, summary judgment is denied on Handt's procedural due process claim against Defendants Koffron, Jacobsen and Takes.

### 2. Procedural Due Process Claim Against Carson

Handt sent repeated kites to Carson, informing her that, pursuant to court order, he was not to be incarcerated. A reasonable inference exists that IMCC had procedures in place for prison staff, such as Carson, to take when an inmate advised of the existence of an order sentencing him to an option other than imprisonment. Iowa law provided a procedure for a review of an inmate's status within three days, if the IMCC superintendent advised the DOC director that there was a question regarding the propriety of continued incarceration. This procedure was not followed. Evidence of what action, if any, Carson, or any other prison official, took in response to Handt's kites is also not in the record. Because Handt sent repeated kites to Carson, specifically referencing his sentencing order that did not authorize his incarceration, and Carson took no action in response, a reasonable jury could find that the procedures at IMCC and the process Handt actually received from Carson were insufficient and violated Handt's procedural due process rights. Because Handt has shown deprivation of a clearly established constitutional right to liberty, and a reasonable jury could find that Handt received insufficient procedural due process from Carson, summary judgment is denied on Handt's procedural due process claim against Defendant Carson.

### D. Eighth Amendment Cruel and Unusual Punishment

In the Second Amended Complaint (Clerk's No. 31), filed July 1, 2010 (after Defendants' Motion for Summary Judgment and Plaintiff's Resistance), Handt for the first time alleged an Eighth Amendment claim. However, in his Resistance to Defendants' Motion for

Summary Judgment (Clerk's No. 30), and prior to filing his Second Amended Complaint, Handt argued his Eighth Amendment claim. The State Defendants did not file a Reply brief, and have not briefed this claim for the Court.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. The Eighth Amendment's prohibition applies only "after conviction and sentence." *Graham v. Connor*, 490 U.S. 386, 393 (1989). In *Davis*, the Eighth Circuit cited a number of other circuit court opinions analyzing claims of imprisonment beyond the sentenced term under the Eighth Amendment, as opposed to the Substantive Due Process Clause of the Fourteenth Amendment. 375 F.3d at 714 (citing *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) ("Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the *eighth amendment's* proscription against cruel and unusual punishment."); *Golson v. Dep't of Corrections*, 914 F.2d 1491, 1990 WL 141470, **1 (4th Cir. 1990) (unpublished table decision) ("Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment."); *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) ("[T]here can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the *eighth amendment*.")). The Court finds Handt's claim of being incarcerated without authorization by court order states a claim under the due process clause of the Fourteenth Amendment and the Eighth Amendment's prohibition against cruel and unusual punishment. The Court has already found Handt had a clearly established right not to be incarcerated based on the June 2 sentencing order, and a reasonable official would have known that committing and holding Handt was unlawful. To establish an Eighth Amendment violation, the prison officials must have acted with the requisite state of mind.

The mental culpability standard under the Eighth Amendment is deliberate indifference. *See Taylor v. Dormire*, 690 F.3d 898, 904 (8th Cir. 2012). Because the mental state required under both an Eighth Amendment cruel and unusual punishment claim and a Fourteenth Amendment substantive due process claim in this context are the same (deliberate indifference), the Court's substantive due process analysis for each set of State Defendants applies with regard to Handt's Eighth Amendment claim as well, and the Court will not repeat it. *See Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993) (explaining that the deliberate indifference

standard to establish a violation of a prisoner's substantive due process rights "was adopted based on analogies to *eighth amendment* situations where the defendant's state of mind was relevant to the issue of whether a constitutional violation has occurred in the first place."). Based on the June 2 sentencing order, Handt had a clearly established right not to be incarcerated, and as discussed in Section III.B., viewing the facts in the light most favorable to Handt, the State Defendants acted with deliberate indifference to Handt's clearly established right in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Summary judgment is, therefore, denied on Handt's Eighth Amendment cruel and unusual punishment claim against Defendants Koffron, Jacobsen, Takes and Carson.

## VI. CONCLUSION

For the reasons discussed above, viewing the record in the light most favorable to Handt, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment (Clerk's No. 27). Summary judgment is **granted** on Handt's Fourth Amendment unreasonable seizure (Count I of the Third Amended Complaint) and Fifth Amendment claims against Defendants Koffron, Jacobsen, Takes and Carson. Summary judgment is **denied** on Handt's Fourteenth Amendment substantive due process (Count II of the Third Amended Complaint), Fourteenth Amendment procedural due process (Count III of the Third Amended Complaint), and Eighth Amendment cruel and unusual punishment (Count V of the Third Amended Complaint) claims against Defendants Koffron, Jacobsen, Takes and Carson.

The discovery deadline in this case is March 1, 2013, and the dispositive motion deadline is April 1, 2013. The Final Pretrial Conference remains set for September 4, 2013, at 10:30 a.m., and the Jury Trial remains set for September 16, 2013.

**IT IS SO ORDERED**.

Dated this 25th day of October, 2012.

*Celeste F. Bremer*

CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE